IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER AND RAEGAN SWANN, | § | |
| | § | |
| Plaintiffs | § | |
| | § | |
| v. | § | CIVIL ACTION NO: _____ |
| | § | |
| BANK OF AMERICA N.A., A/K/A BAC | § | DEMAND FOR JURY TRIAL |
| HOME LOANS SERVICING, LP, F/K/A | § | |
| COUNTRYWIDE HOME LOANS | § | |
| SERVICING, LP, | § | |
| | § | |
| Defendant. | § | |

## PLAINTIFFS' ORIGINAL COMPLAINT, REQUEST FOR TEMPORARY RESTRAINING ORDER, REQUEST FOR TEMPORARY INJUNCTION, AND PERMANENT INJUNCTION

Plaintiffs Christopher and Raegan Swann (Swann) files this Complaint, Request for Temporary Restraining Order, Request for Temporary Injunction, and Permanent Injunction against Bank of America N.A., a/k/a BAC Home Loans Servicing, LP, f/k/a Countrywide Home Loans Servicing, LP (Defendant or Bank of America) and alleges, as follows:

### I.    THE PARTIES

1.    Christopher and Raegan Swann are citizens of Texas, residing in Winnsboro, Texas, Wood County.

2.    Bank of America is a North Carolina corporation doing business in the State of Texas and has appointed CT Corporation System, 350 N. Paul Street, Suite 2900, Dallas, Texas 75201.

3.    Defendant has done and continues to do business in the State of Texas, including the Eastern District of Texas.

### II.    JURISDICTION AND VENUE

4.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1332(a)(1)  because the amount in controversy exceeds the sum or value of $75,000.00 exclusive of interest and costs, and is between citizens of different States.

5.    The Court has in personam jurisdiction over the Defendant because the Defendant is subject to jurisdiction under the Texas Long Arm Statute, Tex. Civ. Prac. & Rem. Code § 17.041 *et seq.*

6.      Venue is based on 28 U.S.C. § 1391(a) or (b) because the acts and transactions constituting the violations alleged herein occurred in this judicial district and the property that is the subject of this action is located in this judicial district.

## III.    INTRODUCTION

7.      Plaintiffs bring this complaint to challenge the failure of Defendant Bank of America to act in good faith and to honor its agreements with borrowers to allow them possession of their own Home. When a large financial institution offers, and tenders a deed in lieu of foreclosure to borrowers to prevent a foreclosure, but then refuses to acknowledge the existence of the deed in lieu, acts in bad faith when after rejecting the approval of a deed in lieu of foreclosure, proceeds to lock the borrowers out of their own Home, refuse to allow entry to the Home, and refuse to discuss their Loan with them.

8.      Plaintiffs also bring this suit for breach of contract for Bank of America's failure to abide by the terms of the Loan for its failure to allow Plaintiffs' possession of their own Home.

9.      In addition, Plaintiffs further allege that Bank of America's handling of this Loan is fraudulent, negligent, and with complete disregard for the harm it caused Plaintiffs.

10.     Plaintiffs further allege that Bank of America violated 15 U.S.C. 1692c-f when it caused telephones to continuously ring of both the Plaintiffs and other family members, occasionally more than twelve times in two days, with the intent to annoy, abuse, and harass those persons, when it falsely represented the character of the legal status of Plaintiffs' Loan, threatened to take legal action that it was not allowed to take, communicated false information to the credit bureaus, used false representations and deceptive means to collect the debt on Plaintiffs' Loan and subsequently served a foreclosure notice on them, and threatened to take non-judicial action to foreclose on Plaintiffs' Home when there is no present right to possession of the property, and finally, refused to communicate with the borrowers about their Loan.

IV.    **FACTS**

11.    Plaintiffs own property located at 302 Hackberry Lane, Tom Bean, Texas 75489 (Home).

**See Exhibit A.**

12.    Plaintiffs refinanced the loan that secured the Home (Loan) with Bank of America in

September 2009 and gave Bank of America a Deed of Trust.  **See Exhibit B.**  Because of Plaintiffs'

outstanding credit score and perfect payment history on the Loan, Bank of America refinanced with a

lower interest rate.

13.    In October 2009, Plaintiff Christopher Swann, a long-time United States Postal Service

employee, was informed of an unexpected required transfer by the United States Postal Service to

Winnsboro, Texas.

14.    As a result of the transfer and unable to make two house payments at the same time, the

Plaintiffs put the Home on the market to sell.

15.    Due to the demands of Christopher Swann's job transfer, the Plaintiffs moved to

Winnsboro, Texas without having sold the Home, in December 2009 and but continued attempts at selling

the Home.

16.    Plaintiffs contacted Bank of America in January 2010 because they were concerned the

Home may not sell and could not continue to maintain two house payments.

17.    Plaintiffs told Bank of America that they were willing to give the deed to the Home in

lieu of a foreclosure in an attempt to be as responsible as they could be in light of the unexpected transfer

of Christopher Swann.

18.    Bank of America agreed to accept the deed in lieu of foreclosure because the Swanns had

attempted to sell the Home for at least ninety days without success.

19.    Bank of America prepared and sent documents regarding the deed in lieu of foreclosure

to the Swanns and the Swanns signed and returned the documents.

20.    The Swanns communicated with Bank of America on the telephone who stated that the

deed in lieu of foreclosure documents were received and that the Swanns needed to remove the Home

from the market, stop making monthly payments and wait for instructions on Bank of America's next steps in recovering the Home.

21.     Bank of America explained that if the Swanns did not receive the instructions by March 1, 2010, to contact Bank of America. The Swanns did not receive the instructions by March 1, 2010 and contacted Bank of America, who surprisingly, told the Swanns that a deed in lieu of foreclosure was never offered and that the Home was in short sale status.

22.     Confused, upset, and frantic, Raegan Swann continued to contact Bank of America in an attempt to figure out the status of the Home and why the deed in lieu of foreclosure was not accepted.

23.     Bank of America began to negatively report the status of the Loan on the Swanns' credit reports as delinquent rather than in deed in lieu of foreclosure status.

24.     Raegan Swann constantly contacted Bank of America in an attempt to figure out what was happening with the Home and their Loan and to keep Bank of America from destroying the Swanns' credit.

25.     The Swanns attempted everything to rectify the situation with Bank of America on more than fifty separate occasions as they watched their credit, the Home, and their lives become destroyed.

26.     Finally, unable to resolve anything with Bank of America, but refusing to give up, Raegan Swann continued to beg Bank of America to explain how to resolve the problem. Eventually, Bank of America refused to take the Plaintiffs' calls, would constantly hang up on Plaintiffs when they could not figure out what was going on with the Loan, but yet continue to flood the Swanns with past-due statements and continually report delinquencies on their credit reports. The Swanns begged for a resolution to make this nightmare disappear but nothing happened.

27.     The Bank continued to deny the deed in lieu of foreclosure, continued to refuse to foreclose, refused to allow Plaintiffs to rent out the Home to attempt to catch up on the payments, refused to accept payments from Plaintiffs stating it was too late, refused to refinance because Plaintiffs' credit score was destroyed (ironically by Bank of America's actions) and refused to even discuss the status of the Loan with Plaintiffs.

28.     Finally, when things could not have gone any worse:  Bank of America locks the Home and refuses the Plaintiffs entry into the Home.

29.     The Swanns constantly begged for access to the Home to try and at least pick up the remaining personal items in the Home.

30.     Bank of America refused, and continues to refuse the Swanns access to their own home.

31.     Subsequently, Bank of America began to harass Raegan Swann's mother-in-law by calling her twelve times in two days regarding her son, Christopher, and daughter in law, Raegan Swann's matter with Bank of America.

32.     Finally, unable to handle any more of the stress, unknown, and egregious conduct as locking them out of their own Home Christopher Swann, a healthy and able-bodied twenty-nine year old, suffered a stroke.  Raegan Swann has been prescribed anti-anxiety medication, and continues to suffer from depression and female problems directly related to the stress caused by Bank of America.

33.     Incredibly, even after being locked out of the Home for more than a year, on June 29, 2012, the Swanns received a letter from Mackie Wolf Zientz & Mann, P.C., a law firm hired by Bank of America, notifying the Swanns that the Home will be foreclosed on August 7, 2012.  **See Exhibit C.**

IV.     **CLAIMS**

## FIRST CLAIM
## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

34.     Plaintiffs hereby incorporate the foregoing paragraphs by reference.

35.     Defendant Bank of America is obligated by contract and common law to act in good faith and to deal fairly with each borrower.

36.     Bank of America offered a deed in lieu of foreclosure to Plaintiffs.  Plaintiffs executed the deed in lieu of foreclosure and returned the documents to Bank of America.  Plaintiffs were instructed to stop making payments on the Loan, Plaintiffs were instructed to take the Home off of the market, and to wait to receive further instruction from Bank of America.

37.     Plaintiffs did not hear anything further from Bank of America. Bank of America alleges that the deed in lieu of foreclosure was never offered.

38.     By the actions of Bank of America, it does not appear that it was acting in good faith when the deed in lieu of foreclosure was extended to Plaintiffs. More so, Bank of America failed to act in good faith when it refused to discuss Plaintiffs' Loan with Plaintiffs, when it locked Plaintiffs out of the Home, and denied access to Plaintiffs.

39.     Further, while being locked out of the Home, Plaintiffs continued to suffer negative hits to their credit, harassing telephone calls, and threatening letters.

40.     A notice of foreclosure sale was mailed by an agent of Bank of America and as such, tendering a foreclose notice when a deed in lieu of foreclosure was initially accepted, but even worse, after already locking Plaintiffs' out of the Home, removes any appearance of dealing in good faith. Additionally, tendering a foreclosure notice when Bank of America has locked the Home and refused access by Plaintiffs further removes any appearances of dealing in good faith.

41.     As a result of Bank of America's conduct, Plaintiffs suffered damages and injuries according to proof at trial.

42.     Plaintiffs seek compensation for their damages including actual damages, costs of suit, attorneys' fees, mental anguish, medical expenses, both past and future, loss of earning capacity, lost wages, and physical impairment.

**SECOND CLAIM**
**BREACH OF CONTRACT**

43.     Plaintiffs hereby incorporate the foregoing paragraphs by reference.

44.     The Deed of Trust constitutes an enforceable contract between Plaintiffs and Defendant.

45.     Plaintiffs performed their duties under the Deed of Trust.

46.     Defendant failed to perform its duties under the Deed of Trust when it took possession of the Home without following the procedures outlined in the Deed of Trust. **See pages 6 – 7 of Exhibit B.**

47.     Defendant's acts and omissions constitute a breach of the Deed of Trust, resulting in damages to Plaintiffs, for which Plaintiffs now sue.

## THIRD CLAIM
## FRAUD

48.     Plaintiffs hereby incorporate the foregoing paragraphs by reference.

49.     Plaintiffs contend that the actions described in this Complaint illustrate a pattern of systematic intentional fraud performed by Bank of America, N.A., and their employees and agents to provide misleading and inconsistent information to homeowners designed to wear them down to the point at which Bank of America can obtain the foreclosure without any further interference from the homeowners.

50.     In order to prove the cause of action for fraud, the following elements must be proven:

      a.    the defendant made a representation to Plaintiff;
      b.    the representation was material;
      c.    the representation was false;
      d.    when the defendant made the representation, the defendant

          (1)  knew the representation was false; or
          (2)  made the representation recklessly, as a positive assertion, and
               without knowledge of its truth;
      e.    the defendant made the representation with the intent that the plaintiff act
          on it;
      f.    the plaintiff relied on the representation; and
      g.    the representation caused the plaintiff injury.

51.     Defendant made various material representations to Plaintiffs, including offering and accepting a deed in lieu of foreclosure from Plaintiffs, instructing Plaintiffs to take the Home off of the market, instructing Plaintiffs to stop making payments on the Home, informing Plaintiffs the deed in lieu of foreclosure was never accepted, informing the Plaintiffs they had to conduct a Short Sale instead of the deed in lieu of foreclosure, and informing Plaintiffs the Home was locked and the only way they could access the Home was with permission from Defendant.  Such representations were material, and such representations were false. (Element One)

52.     Defendant made such representations knowing they were false and also made them recklessly without knowledge of the truth. Defendant made such representations with the intent that Plaintiffs rely on such representations, and Plaintiffs did in fact rely on such representations. (Element Two) The deed in lieu of foreclosure was valid the moment it was offered to Plaintiffs and Defendant knew the moment the deed in lieu of foreclosure was mailed, it was valid. Defendant not only failed to accept an offer it already made, but then continued to take affirmative steps in direct opposition from the offer made, specifically, reporting the Loan as delinquent, denying the existence of the deed in lieu of foreclosure, denying access to the Swanns to recover their personal items, and noticing the Home for foreclosure. That conduct was reckless. Further, even if the deed in lieu of foreclosure is invalid, as contended by Bank of America, at that point, it did not have the legal right to lock the Home and deny Plaintiffs' access to the Home. By locking the Home, Bank of America represented to Plaintiffs that it owned the Home, which it clearly did not.

53.     Defendant intended to induce Plaintiffs to act upon the representation that a deed in lieu was accepted in that Plaintiffs stopped making payments, removed the Home from the market to sell, and waited for Bank of America to send instruction. Once Plaintiffs acted on Bank of America's instructions, it rejected the deed in lieu of foreclosure, locked the Home, and then subsequently, began foreclosure proceedings. (Element three)

54.     Plaintiffs actually and justifiably relied on the representations, which resulted in the injuries. Plaintiffs stopped making the payments on the Loan, took the Home off of the market, and acted as though a deed in lieu of foreclosure was in place. (Element Four) All of the actions taken by Plaintiffs were in reliance on the fraudulent conduct by Bank of America which caused Plaintiffs' Loan to be in default, caused Plaintiffs' credit to be destroyed, caused an incredible amount of angst, stress, and serious medical conditions, including Christopher Swann's stroke, and Raegan Swann's mental illnesses and female reproductive problems caused by stress.

55.     Bank of America had knowledge that the deed in lieu of foreclosure was valid when it left the possession of Bank of America, and even though it was valid, rejected it. Again, even if it was

invalid, Bank of America then unlawfully locked the Home and denied Plaintiffs' access. Finally, if Bank of America possessed the right to lock the Home because of a deed in lieu of foreclosure it continues to deny exists, then noticing the Home for foreclosure is wrongful. Regardless, denying Plaintiffs' access to the Home is wrongful and unlawful.

56.     Plaintiffs seek compensation for their damages from the fraud, including mental anguish and punitive damages.

### FOURTH CLAIM
### FAIR DEBT COLLECTION PRACTICES ACT

57.     Plaintiffs hereby incorporate the foregoing paragraphs by reference.

58.     15 USC 1692 regulates debt collection from debt collectors.

59.     15 USC 1692c expressly states that if a consumer notifies a debt collector in writing that the consumer wishes the debt collector to cease further communication, the debt collector shall not communicate further with the consumer (with exception). On July 23, 2012, Bank of America, and its agents, received notice, in writing, to cease further communication with the consumer and the consumer's family members regarding the debt. **See Exhibit D.** Since July 23, 2012, Bank of America continues, multiple times in one day, to contact Plaintiffs' family member asking for Plaintiffs' social security numbers and other private information. Bank of America continues to communicate in light of confirmation of receipt of the notice in writing to cease all communication regarding the Loan. Further, even as recent as the date of this Complaint being filed, Defendant STILL continues to send correspondence to Plaintiffs regardless of the cease and desist notice received as evidenced by **Exhibit D.**

60.     15 USC 1692d(5) specifically prohibits causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number. Bank of America repeatedly called Plaintiffs and Plaintiff Raegan Swann's mother-in-law, some times more than twelve times in two days, attempting to collect on Plaintiffs' Loan.

61.     15 USC 1692e prohibits a debt collector from falsely representing the amount or legal status of any debt, prohibits threats to take any action that cannot legally be taken, prohibits the false

representation that the consumer committed some conduct to disgrace the consumer, communicating to any person credit information which is known or should be known to be false, or the use of any false representation or deceptive means to collect or attempt to collect any debt.

62.     15 USC 1692f prohibits a debt collector from taking or threatening to take any non-judicial action to effect dispossession of property if there is no present right to possession of the property claimed as collateral.

63.     Bank of America violated each of the above-mentioned statutes when it offered the deed in lieu of foreclosure to Plaintiffs, unilaterally rejected it, proceeded to lock Plaintiffs out of their Home, then subsequently sent foreclosure notices to them, all the while contacting the Plaintiffs and their family members.

64.     As a result of Defendant's acts, Plaintiff Christopher Swann suffered a stroke and Raegan Swann suffers from anxiety, depression, and reproductive problems directly related to stress caused by Bank of America.

65.     Plaintiffs have also suffered significant economic losses as well, including their credit worthiness, the equity in the Home, the loss of earning capacity, and lost wages.

66.     Plaintiffs seek compensation for their damages, including actual or statutory damages, attorneys' fees and such other and further relief as the Court may deem just and proper.

**FIFTH CLAIM**
**NEGLIGENCE AND GROSS NEGLIGENCE**

67.     Plaintiffs hereby incorporate the foregoing paragraphs by reference.

68.     In order to prove the cause of action for negligence, the following elements must be proven:

      a. The Defendant owed a legal duty to the Plaintiff;
      b. The Defendant breached the duty; and
      c. The breach proximately caused the Plaintiff's injury.

69.     Here, Defendant Bank of America owed a duty of care to Plaintiffs to accept the deed in lieu of foreclosure it initially offered, properly service Plaintiffs' Loan, knowing if it later rejected the

deed in lieu of foreclosure, that it did not have the legal right to lock the Plaintiffs out of their Home, and even if Bank of America had the right to legally lock the Plaintiffs out of their Home, it should have allowed Plaintiffs access to obtain their personal items.

70.     Defendant breached its duty when it locked Plaintiffs out of a Home that it lawfully did not have the right to do, then worse, refused access to Plaintiffs, while simultaneously negatively reporting misrepresentations on Plaintiffs' credit, and finally attempting to foreclose on the Home.

71.     Defendant owed a duty to Plaintiffs to honor the deed in lieu of foreclosure it initially offered to Plaintiffs, and if not, to ONLY lock the Home when it had the lawful right to do so, to allow access by Plaintiffs to obtain their personal possessions, to attempt to resolve, after being aware of the egregious conduct, the situation with Plaintiffs' Loan and their Home, and finally, to at least not continue to harass Plaintiffs with foreclosure notices that Bank of America should have known was unlawful.

72.     Defendant breached its duty when it rejected the deed in lieu of foreclosure that was valid the moment it left Bank of America, when Defendant locked Plaintiffs out of the Home, when Defendant misrepresented to the credit bureaus that the Plaintiffs were in default when the Plaintiffs had accepted the deed in lieu, refusing to allow Plaintiffs to access the Home, and finally, to send foreclosure notices after it had already locked the Home.

73.     Because of Defendant's breach, Plaintiff suffered significant economic losses, significant injury to the Home, and significant personal injuries to themselves.

74.     Defendant's negligence proximately caused Plaintiff such losses, including but not limited to past and future physical pain and mental anguish, past and future loss of earning capacity, past and future physical impairment, and past and future medical care expenses.

75.     Defendant's conduct and negligent was done knowingly and intentionally, and in such complete disregard for Plaintiff's rights so as to amount to gross negligence for which Plaintiff seeks punitive damages.

## SIXTH CLAIM
## NEGLIGENCE PER SE

76.     Plaintiffs hereby incorporate the foregoing paragraphs by reference.

77.     In order to prove the cause of action for negligence per se, the following elements must be proven:

a. Plaintiffs belong to the class of persons the statute was designed to protect, and the injury is of the type the statute was designed to prevent;
b. The statute is one for which tort liability may be imposed when violated;
c. The Defendant violated the statute without excuse.
d. The Defendant's act or omission proximately caused Plaintiffs' injury.

78.     Here, Plaintiffs are owners of the Home pursuant to a real estate note and deed of trust with Bank of America. The Texas Property Code requires specific mandates for a beneficiary of a deed of trust to obtain possession of the property to protect homeowners from any wrongful conduct where the result is the loss of their home and the contents inside.

79.     Tort liability can be imposed for violations of the Texas Property Code.

80.     When Bank of America locked Plaintiffs out of the Home and refused entry and access to even obtain their personal possessions, it violated the provisions of the Texas Property Code. Bank of America does not own the Home, and admitted that by its conduct when it served a foreclosure notice more than a year after locking Plaintiffs out of their own Home.

81.     Bank of America had no excuse to violate the provisions of the Texas Property Code, and because it denied access to Plaintiffs, the Home was destroyed and the contents ruined. Such conduct by Bank of America caused Plaintiffs' injuries.

## PLAINTIFFS' APPLICATION FOR TEMPORARY RESTRAINING ORDER, TEMPORARY INJUNCTION, AND PERMANENT INJUNCTION

82.     Plaintiffs hereby allege and incorporate by reference all other paragraphs of their Original Complaint as if fully set forth herein and further aver:

83.     Plaintiffs ask the Court to issue a Temporary Restraining Order, Temporary Injunction, and Permanent Injunction seeking to restrain and enjoin the Defendant, and their officers, agents, servants, employees, and attorneys and all persons and entities in active concert or participation with

them from denying Plaintiffs' access to the Home, from foreclosing on the Home at the August 7, 2012

sale, and to continue communications with Plaintiffs and Plaintiffs' family regarding the Loan and the

Home.

84.     In order to obtain a temporary restraining order and temporary injunction, Plaintiffs have

the burden of proving: (1) a substantial likelihood of success on the merits, (2) a substantial threat of

irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied

outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction

will not disserve the public interest. *See Janvey v. Alguire*, 628 F.3d 164, 174 (5th Cir. 2010); *see also*

*Enter. Intern, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 471 (5th Cir. 1985).

85.     Showing a substantial likelihood of success on the merits "does not require that the

movant[s] prove [their] case," and "where other factors are strong, a showing of some likelihood of

success" can justify a preliminary injunction. *See Assoc. of Taxicab Operators, USA v. City of Dallas*,

760 F.Supp. 2d 693, 696 (N.D.Tex. 2010)(citing *Lakedreams v. Taylor*, 932 F.2d 1103, 1109 n.11 (5th

Cir. 1991)).

86.     Here, it is probable that Plaintiffs will recover from Defendant after a trial on the merits

for several reasons, including but not limited to, (1) Defendant offered a deed in lieu of foreclosure to

Plaintiffs which became effective the moment it left Defendant's possession, however, Defendant

rejected the existence of the deed in lieu of foreclosure and reported the Loan as delinquent and

proceeded towards foreclosure; (2) In the meantime, though, Defendant locked Plaintiffs' Home when

it does not own the Home as evidenced in the county deed records and by Defendant's own conduct

when it proceeded towards foreclosure; (3) Defendant committed fraud they were required to obtain

permission to access their own personal belongings without the right to do so and locked Plaintiffs out of

their own Home; (4) Defendant violated the Fair Debt Collection Practices Act when it continued to

communicate with Plaintiffs' family members even in light of written notice to cease all

communications; and (5) Defendant violated provisions of the Texas Property Code when it took

possession of the Home it did not own.

87.     If Plaintiffs' application for temporary restraining order, temporary injunction and permanent injunction is not granted, there is a substantial threat of irreparable injury because "irreparable injury is suffered when one is wrongfully ejected from his home." Johnson v. U.S. Dept. of Agriculture, 734 F.2d 774, 789 (11th Cir. 1984); Alcarez v. Wachovia Mortg. FSB, 592 F.Supp.2d 1296, 1301 (E.D.Cal. 2009). Further, Plaintiffs still have personal belongings in the Home and the Home is set for foreclosure on August 7, 2012 and the harassing telephone calls interrupt Plaintiffs' family's daily lives and will continue to do so unless Bank of America is restrained and enjoined from doing so.

88.     The threatened injury if the injunction is denied far outweighs any harm that will result if the injunction is granted.  If the Court denies the injunction, Plaintiffs lose their personal possessions in the Home, including documents and other invaluable family records, the Home could be purchased by a bona fide purchaser in which Plaintiffs lose any equity or value in the Home, and finally, if Bank of America is able to continue to harass and contact Plaintiffs' family members at all hours of the day and night, and sometimes in excess of six times a day, Plaintiffs' family will continue to suffer.  This injury far outweighs any harm that would be done to Bank of America if this Court grants the temporary restraining order and the temporary injunction.

89.     Because Plaintiffs will otherwise be irreparably harmed without an adequate remedy at law, Plaintiffs seek a temporary restraining order and injunctive relief to bar any transfer of any interest of their homestead, to immediately order Defendant to allow Plaintiffs access to the Home, and to order Defendant to immediately cease all communications to Plaintiffs and their family members regarding the Loan. Plaintiffs who are at issue in this suit, seek to bar any forcible detainer or foreclosure proceedings in any form or manner by Defendants or otherwise, to stay any proceeding in any other Court to seek foreclosure of the Property or possession of the Property by or for Defendants or any party not yet named.

90.     The grant of a temporary restraining order and temporary injunction, in this case, will not disservice the public interest as Texas courts have consistently held the terms in a deed of trust and provisions of the Texas Property Code must be strictly followed to protect one's property.  The

injunction would serve the public interest in Texas as it would force Bank of America to comply with Texas law, the Texas Property Code, and by the terms of its own contract with Plaintiffs.

## BOND

91.     Plaintiffs are willing to post a bond.

92.     Plaintiffs attach affidavits that prove the allegations in this application for injunctive relief as **Exhibit E** and incorporate it by reference.

## REQUEST FOR TEMPORARY INJUNCTION

93.     Plaintiffs ask the Court to set their application for Temporary Injunction for a hearing, and, after a hearing, issue a Temporary Injunction against Defendants.

## REQUEST FOR PERMANENT INJUNCTION

94.     Plaintiffs ask the Court to set their request for a Permanent Injunction for a full trial on the merits and, after the trial, issue a Permanent Injunction against Defendant.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the Court that the Defendant be cited to appear and answer herein, and that the Court immediately set a hearing on Plaintiffs' Temporary Restraining Order prior to August 7, 2012, to bar any foreclosure proceedings in any form or manner by Defendant or otherwise of the Property, to cease any and all communications with Plaintiffs and Plaintiffs' family members regarding the Loan, and to allow immediate access to Plaintiffs to the Home and;

a.      Enter judgment on behalf of Plaintiffs against Defendant for breach of the covenant of good faith and fair dealing, breach of contract, fraud, negligence, gross negligence, negligence per se, and a finding of violations of the Fair Debt Collection Practices Act;

b.      Award Plaintiffs the costs of this action, including attorneys' fees;

c.      Award Plaintiffs economic and non-economic, including punitive, damages;

d.      Grant Plaintiffs such other and further relief as this Court finds necessary and property.

## JURY TRIAL DEMAND

Plaintiffs respectfully request a trial by jury.

Respectfully submitted,

KHIRALLAH WEST, P.C.

*Rachel E. Khirallah*

Rachel E. Khirallah
Texas Bar No. 24050872
Chad A. West
Texas Bar No. 24049083
3027 Routh Street, Suite 100
Dallas, Texas 75201
(214) 509-7555
(469) 718-5887
rkhirallah@khirallahwest.com
cwest@khirallahwest.com
ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE:

On July 31, 2012 I electronically submitted the foregoing document with the clerk of the court for the U.S. District Court, Eastern District of Texas, using the electronic case filing system of the court.

*Rachel E. Khirallah*

Rachel E. Khirallah